# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sharon Kemnitz,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. 12-cv-00285 (SRN/LIB)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Lionel H. Peabody, Peabody Law Office, P.O. Box 10, Duluth, MN 55801-0010, for Plaintiff.

Ana H. Voss and David W. Fuller, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Objections of Defendant Michael J. Astrue, Commissioner of Social Security [Doc. No. 14] to the February 1, 2013, Report and Recommendation ("R & R") of Magistrate Judge Leo I. Brisbois. [Doc. No. 12.] In a thorough R & R, the Magistrate Judge recommended that the Court grant Plaintiff's Motion for Summary Judgment, deny Defendant's Motion for Summary Judgment, reverse the decision of the Administrative Law Judge ("ALJ"), and remand for entry of judgment consistent with the R & R. [Doc. No. 12.] For the reasons set forth below, the Court overrules Defendant's Objections and adopts the Magistrate Judge's R & R in its entirety.

## I. BACKGROUND

### A. Plaintiff's Medical History

The factual and procedural background of this case is well documented in the Magistrate Judge's R & R and is incorporated herein by reference. (R & R at 1–7 [Doc. No. 12].) Briefly stated, Plaintiff is a 52-year-old woman with a tenth-grade education and training as a nursing assistant. (Admin. Rec. at 34, 110 [Doc. No. 5].) On January 21, 2003, Plaintiff was admitted to St. Joseph's Medical Center's emergency room in Brainerd, Minnesota after reporting "severe chest pain." (Id. at 347–48.) A CT scan revealed an "acute Type A aortic dissection," or an aortic aneurysm, and Plaintiff was transported by air ambulance to North Memorial Medical Center in Robbinsdale, Minnesota. (Id. at 266) On January 22, 2003, Plaintiff's aneurysm was surgically repaired. (Id.) Following surgery, Plaintiff's aortic root measured at 4.2 cm. (Id. at 265.)

During a follow up medical visit on July 25, 2003, Plaintiff's MRI showed that her abdominal aorta had a maximum diameter of 2.6 cm. (Id. at 276.) A CT scan on May 23, 2005, revealed that Plaintiff's aorta root measured between 3 and 4 cm in diameter. (Id. at 453–54.) A CT scan on March 2, 2006, showed no change in Plaintiff's condition for the previous year. (Id. at 410.) On July 13, 2006, Plaintiff underwent an echocardiogram that showed her aorta root measured 3.4 cm. (Id. at 402.)

Further testing of Plaintiff's aorta on February 8, 2007, showed differing results. An echocardiogram showed a slight reduction in the size of Plaintiff's aorta root to 2.9 cm. (Id. at 361, 398.) Notes from a CT scan that same day, however, stated that Plaintiff's "aortic root is dilated, measuring 4.8 cm in diameter, increasing slightly in size since the previous

study." (Id. at 364.)  Plaintiff underwent a CT scan again on August 29, 2008, which

showed her ascending thoracic aorta to be approximately 5 cm.  (Id. at 367, 371.)[1]  The

report from an ultrasound taken on September 3, 2008, indicates "[i]ncreasing diameter of

the aorta, presently measuring 3.2 centimeters in diameter."  (Id. at 375.)  A subsequent

review by a consulting cardiac specialist and radiologist concluded:

> [T]he ultrasound is not an adequate test, it is an inferior test for assessing the
> aorta compared to the CT that she had done and, in fact, the CT does not
> show any change in size compared to her previous CTs which would lead to
> the conclusion that her aortic dissection is stable.

(Id. at 415, 490.)

On December 9, 2008, Dr. Michael King wrote to Dr. Les E. Riess, Plaintiff's

primary care physician, and noted that  "apparently [Plaintiff's] aortic root is potentially

increasing in size from 4.2 [cm] to now 4.8 [cm]," and recommended Plaintiff perform a CT

scan annually.  (Id. at 477.)  The Plaintiff had both a CT scan and ultrasound on April 28,

2009.  The ultrasound showed Plaintiff's abdominal aorta at 2.7 cm and the CT scan found

Plaintiff's ascending thoracic aorta through her upper abdominal aorta to be unchanged

since the August 29, 2008 measurement of her thoracic aorta at 5 cm.  (Id. at 367, 371, 481,

500.)

Plaintiff had another CT scan on September 8, 2009, which found "[d]issection of

the thoracic and abdominal aorta is again appreciated, unchanged from the previous two

examinations."  (Id. at 488.)  Additionally, Dr. King wrote a letter on April 18, 2011, which

---

[1]      Dr. Michael King, Plaintiff's treating physician, clarified that the August 29, 2008
CT scan "shows that the ascending aortic aneurysm has further increased, now to 5 cm at
the level of the aortic root."  (Admin. Rec. at 508 [Doc. No. 5].)

summarized Plaintiff's medical records and stated that Plaintiff's "aortic root has continued to increase over the last several years . . . . It certainly appears from the CT scan reports that I have reviewed that there has been an appreciable increase in the size of the ascending aortic root since my initial repair in January 2003." (Id. at 508.)

**B.    Procedural History**

In September 2008, Plaintiff filed an application for Social Security Disability and SSI Disability benefits, alleging that her disability began on January 22, 2003. (Id. at 110–19.)  The Commissioner denied her claims on October 29, 2008. (Id. at 57–61.)  Plaintiff then filed a Request for Reconsideration, and on January 26, 2009, the Commissioner affirmed his decision to deny her claims. (Id. at 67–69.)  Plaintiff subsequently requested a hearing by an ALJ, which was held on August 23, 2010 before ALJ Larry Meuwissen. (Id. at 28–52.)  Plaintiff and a vocational expert, Mr. Hogenson, testified at the hearing. (Id.)  After the hearing, the ALJ issued an opinion finding that Plaintiff had been disabled since May 19, 2010 (the date of Plaintiff's 50th birthday), but that she was not eligible for Social Security Disability benefits prior to the expiration of her date of last insured of December 31, 2008. (Id. at 18, 14–27.)  Plaintiff sought review of the adverse decision with the Appeals Council, but it denied review on January 4, 2012, and the ALJ's decision became the final decision of the Commissioner. (Id. at 1–4.)

On February 3, 2012, Plaintiff filed a complaint seeking judicial review of the ALJ's decision denying her application for disability benefits. (Compl., [Doc. No. 1].)  On July 6, 2012, Plaintiff filed a Motion for Summary Judgment [Doc. No. 6] and on August 20, 2012, Defendant filed a Motion for Summary Judgment. [Doc. No. 9.]  On February 1, 2013, the

Magistrate Judge issued an R & R granting Plaintiff's Motion for Summary Judgment, denying Defendant's Motion for Summary Judgment, reversing the decision of the ALJ, and remanding the action for entry of judgment consistent with the R & R. (R & R at 23–24 [Doc. No. 12].) Specifically, the Magistrate Judge determined that the ALJ "misstated the requirements of Listing 4.10 and 4.00H6" and failed to give "controlling weight to the treating physicians' opinions, and he did not provide his reasons for doing so." (R & R at 10–13, 17 [Doc. No. 12].) The Magistrate Judge also found that "substantial evidence on the record on the whole <u>does not</u> support the ALJ's determination . . . that Plaintiff did not meet the requirements of Listing 4.10 . . . . [and] that substantial evidence on the record as a whole <u>does</u> support a finding that Plaintiff met Listing 4.10 and satisfied the duration requirement." (<u>Id.</u> at 23.) Defendant filed Objections to the Magistrate Judge's R & R on February 14, 2013. [Doc. No. 14.]

## II. DISCUSSION

### A. Standard of Review

A district court must make an independent, de novo evaluation of those portions of an R & R to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>accord</u> D. Minn. LR 72.2(b).

This Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g). The Commissioner's decision to deny social security benefits must be affirmed by this Court if it conforms to the law and is supported by

substantial evidence on the record as a whole.  See id.; accord McKinney v. Apfel, 228 F.3d

860, 863 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but is enough

that a reasonable mind would find it adequate to support the Commissioner's conclusion."

McKinney, 228 F.3d at 865.  In determining whether existing evidence is substantial, the

Court considers evidence that detracts from the Commissioner's decision as well as

evidence that supports it.  Id.

### B.     Whether the ALJ Misstated the Requirements of Listing 4.10

Defendant objects to the Magistrate Judge's determination that the ALJ misstated

and misapplied the requirements of Listing 4.10.  (Objections at 1–3 [Doc. No. 14].)  Listing

4.10 states:

> Aneurysm of aorta or major branches, due to any cause (e.g., atherosclerosis,
> cystic medial necrosis, Marfan syndrome, trauma), demonstrated by
> appropriate medically acceptable imaging, with dissection not controlled by
> prescribed treatment (see 4.00H6).

20 C.F.R. Part 404, Subpart P, App'x 1, Listing 4.10.  Listing 4.00H6 provides:

> When does an aneurysm have "dissection not controlled by prescribed
> treatment," as required under 4.10?  An aneurysm (or bulge in the aorta or
> one of its major branches) is dissecting when the inner lining of the artery
> begins to separate from the arterial wall.  We consider the dissection not
> controlled when you have persistence of chest pain due to progression of the
> dissection, an increase in the size of the aneurysm, or compression of one or
> more branches of the aorta supplying the heart, kidneys, brain, or other
> organs.  An aneurysm with dissection can cause heart failure, renal (kidney)
> failure, or neurological complications.  If you have an aneurysm that does not
> meet the requirements of 4.10 and you have one or more of these associated
> conditions, we will evaluate the condition(s) using the appropriate listing.

20 C.F.R. Part 404, Subpart P, App'x 1, Listing 4.00H6.

The ALJ stated in his written decision that Plaintiff did not meet the requirements of

Listing 4.10 "because the evidence of record does not document a persistence of chest pain along with a progression of the dissection; the evidence, rather, shows the disease to be stable." (Admin. Rec. at 21 [Doc. No. 5]) (emphasis supplied.) The Magistrate Judge determined that the ALJ misstated the requirements of Listing 4.10 and 4.00H6 because the Plaintiff must show "only one of the three stated conditions (persistence of pain, an increase in size, or compression of branches supplying major organs)" and the ALJ's findings "at the very least implies that the two conditions must occur together." (R & R at 10 [Doc. No. 12]) (emphasis in original.)

Defendant agrees in his Objections that Plaintiff is only required to satisfy one of the three conditions listed in 4.006H and argues that the ALJ's use of the phrase "along with" is not inconsistent with the Listing, "as the ALJ simply noted that Plaintiff exhibited neither condition." (Objection at 2 [Doc. No. 14].) The Court finds that the Magistrate Judge correctly concluded that the ALJ improperly suggests that Plaintiff must demonstrate more than one of the stated conditions set forth in 4.00H6 to meet Listing 4.10. Accordingly, the ALJ misstated and misapplied the requirements of Listing 4.10.

### C. Whether Substantial Evidence Supports the ALJ's Finding That Listing 4.10 Was Not Met

Defendant argues that even if the ALJ misstated the requirements of Listing 4.10, such distinction is of no "practical import," because "the ALJ found that Plaintiff's impairments did not meet any of the three conditions [of 4.00H6]." (Id. at 2.) Defendant objects to the Magistrate Judge's conclusion that substantial evidence did not support the ALJ's finding that Plaintiff's aneurysm had not increased in size. (Objections at 3–6 [Doc.

No. 14].)  Specifically, Defendant argues that the Magistrate Judge overlooked "the notion that Plaintiff's aneurysm sometimes decreased in size and was otherwise stable."  (Id. at 4.) Additionally, Defendant contends that under 20 C.R.F. §§ 404.1509, 416.909, Plaintiff must prove that her impairment "lasted or must be expected to last for a continuous period of at least 12 months," which she cannot do because there is evidence that shows her aneurysm decreased in size after it first appeared to increase in size in February 2007.  (Id. at 3.) Defendant also objects to the Magistrate Judge's finding that the ultrasounds were inferior to the CT scans as a reliable medical means to determine whether Plaintiff's aneurysm had increased in size.  (Id. at 5.)

The Court agrees with the Magistrate Judge's conclusion that the ALJ erred in determining that Plaintiff does not meet the requirements of 4.006H.  After Plaintiff's surgery on January 22, 2003, her aortic root measured at 4.2 cm and her last CT scan in September 2009 indicated that Plaintiff's ascending thoracic aorta at the aortic root measured at approximately 5 cm—this demonstrates that Plaintiff's aneurysm, over a number of years, increased in size.  The Magistrate Judge properly noted that there were tests that found that Plaintiff's aneurysm had decreased in size, for example, in July 2006 and September 2008.  The Magistrate Judge correctly concluded, however, that since Plaintiff's aortic root had increased in size in February 2007, August 2008, and September 2009 from when she was initially treated in January 2003, she met the requirements of Listing 4.10.

Moreover, the Magistrate Judge properly noted that cardiac specialist Dr. Boylan stated that ultrasound was an inferior diagnostic test when compared to CT scans.  The

Magistrate Judge correctly stated that "[t]he fact that the medical record contains reports from an 'inferior' test that show a reduction in the size of Plaintiff's aneurysm is not sufficient to outweigh the objective records of the medically preferred CT scans that show an increase from 4.2 cm in 2003, to 4.8 cm in 2007, then plateauing at 4.8 to 5.0 cm by 2009." (R & R at 21–22 [Doc. No. 12].) Accordingly, the Court finds that the Magistrate Judge's conclusion that Plaintiff met the requirements of Listing 4.10 is supported by substantial evidence in the record.

### D.     Remand

Defendant objects to the Magistrate Judge's recommendation that the Court remand the action for entry of judgment, arguing that if the Court determines substantial evidence did not support the ALJ's decision, it should remand the case for further consideration. (Objections at 6 [Doc. No. 14].) The Eighth Circuit has held that reversal of denial of benefits is proper where "the total record overwhelmingly supports a finding of disability." Beeler v. Bowen, 833 F.2d 124, 127 (8th Cir. 1987). Furthermore, if remand for further hearings "would merely delay receipt of benefits, an order granting benefits is appropriate." Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984). Under the circumstances present in this case, the Court finds that reversal for an award of benefits is proper. The Court has determined that Plaintiff is entitled to benefits under Listing 4.10 and remanding the action would only delay Plaintiff's ability to receive benefits. Accordingly, the Court will remand this action for entry of judgment consistent with this Order.

### III.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1. Defendant's Objections [Doc. No. 14] to the Magistrate Judge's R & R [Doc. No. 12] are **OVERRULED**;

2. The Magistrate Judge's R & R [Doc. No. 12] is **ADOPTED**;

3. Plaintiff's Motion for Summary Judgment [Doc. No. 6] is **GRANTED**;

4. Defendant's Motion for Summary Judgment [Doc. No. 9] is **DENIED**; and

5. The decision of the ALJ is **REVERSED AND REMANDED** for entry of judgment consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: March 4, 2013                    s/ Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge